IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 16 2010

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

MICHAEL JEROME HAYES,            §
                                 §
            Applicant,           §
                                 §
v.                               §        No. 4:09-CV-531-A
                                 §
RICK THALER, Director,           §
Texas Department of Criminal     §
Justice, Correctional            §
Institutions Division,           §
                                 §
            Respondent.          §

MEMORANDUM OPINION
and
ORDER

This is a petition for writ of habeas corpus pursuant to 28
U.S.C. § 2254 filed by applicant, Michael Jerome Hayes, a state
prisoner currently incarcerated in Huntsville, Texas, against
Rick Thaler, Director of the Texas Department of Criminal
Justice, Correctional Institutions Division, respondent.  After
having considered the pleadings, state court records, and relief
sought by applicant, the court has concluded that the petition
should be denied.

I.  Factual and Procedural History

In September 2004 applicant was charged by indictment with
one count of possession of a controlled substance, namely,
cocaine, in the amount of one gram or more but less than four

grams in the Criminal District Court Number Three of Tarrant County, Texas. (Clerk's R. at 2.) The indictment also included a habitual offender notice alleging applicant had been twice previously convicted of felony drug-related offenses. (*Id.*) Following his trial in November 2005, a jury found applicant guilty of the charged offense. (*Id.* at 198) Thereafter, applicant entered a plea of true to the habitual offender allegation, and the trial court assessed his punishment at 32 years' confinement. (*Id.*) Applicant appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused applicant's petition for discretionary review. *Hayes v. Texas*, No. 2-05-431-CR (Tex. App.-Fort Worth Oct. 19, 2006) (not designated for publication); *Hayes v. Texas*, No. PDR No. 1792-06. Applicant did not seek writ of certiorari. (Pet. at 3) Applicant filed a state application for writ of habeas corpus raising the claims presented herein, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court. *Ex parte Hayes*, Application No. WR-46,403-05, at cover. This federal petition followed.

The state appellate court summarized the evidence at trial as follows:

On March 30, 2004, Hayes rode as a passenger in a car, which Fort Worth Police Officers Clarence William Davis and James Pinkston observed committing multiple traffic violations. Officer Davis initiated a traffic stop. The car's driver [Melanie Hart] immediately approached the officers while holding her nose and crying. The officers-believing that an assault had occurred-detained Hayes in the back seat of the patrol car pending investigation. Subsequently, the officers discovered that Hayes had an outstanding warrant. They briefly removed Hayes from the back seat of the patrol car to arrest him and then returned him to that same seat for transportation to police headquarters.

Upon receiving the driver's consent to search the vehicle, the officers located a small capsule under the passenger's seat. The officers believed that the capsule contained cocaine. Later, Officer Pinkston removed Hayes from the patrol car and discovered a plastic bag containing additional capsules in the patrol car's backseat. The Fort Worth Police Department crime lab tested the capsules and determined that the capsules removed from both the police car and the stopped vehicle contained cocaine totaling 1.437 grams.

*Hayes*, No. 2-05-431-CR, slip copy, at 2.

## II. ISSUES

In six grounds, applicant claims (1) he was denied his constitutional right to compulsory process, (2) he was denied his constitutional right to confront witnesses, (3) he was denied his constitutional right to effective assistance of counsel at trial, (4) he was denied his constitutional right to effective assistance of counsel on appeal, (5) the state withheld exculpatory evidence, and (6) the initial stop was

unconstitutionally pretextual and there was no affirmative link

shown between him and the contraband.  (Pet. at 7-8; Pet'r Mem.

in Supp. at 2-38)

### III.  RULE 5 STATEMENT

Respondent asserts the petition is not barred by the statute

of limitations or subject to the successive petition bar.

(Resp't Ans. at 5)  Respondent further asserts applicant

exhausted his state court remedies as required by 28 U.S.C. §

2254(b)(1)(A), except for his Fourth Amendment claim.

### IV.  DISCUSSION

### Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf

of a person in custody pursuant to the judgment of a state court

shall not be granted with respect to any claim that was

adjudicated on the merits in state court proceedings unless he

shows that the prior adjudication:  (1) resulted in a decision

that was contrary to, or involved an unreasonable application of,

clearly established federal law, or (2) resulted in a decision

that was based on an unreasonable determination of the facts in

light of the evidence presented in the state court.  28 U.S.C. §

2254(d).  A decision is contrary to clearly established federal

law if the state court arrives at a conclusion opposite to that

reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Thus, factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S.

322, 340 (2003); *Williams*, 529 U.S. at 399. Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

The state habeas judge, who also presided over applicant's trial, conducted a hearing by affidavit and entered findings of fact refuting applicant's claims, and, applying those findings, determined applicant was not entitled to habeas relief. (State Habeas R. at 175-93) The Texas Court of Criminal Appeals likewise denied applicant's claims on the factual findings of the habeas court. Applicant has failed to rebut the findings by clear and convincing evidence, thus the court defers to those findings.

**(1) Right to Compulsory Process**

Applicant claims his constitutional right to obtain witnesses in his favor, namely, Melanie Hart and Max Courtney, an independent chemist, was violated. (Pet'r Mem. in Supp. at 2-6) U.S. CONST. amend. VI. Applicant claims Hart would have testified that she never gave the officers consent to search the car, that

she did not tell the officers applicant carried drugs "in his butt crack," that she too was placed in the back seat of the patrol car at some point, that she did not tell the officers that applicant had assaulted her, and that the officer's search of applicant did not yield a pill or a bag of narcotics from his person or the area surrounding him. Applicant claims Max Courtney's testimony and DNA analysis would have rebutted the allegations that he had a bag of drugs in his butt crack, which was allegedly found under the seat of the patrol car that transferred him to jail.

The state habeas court entered the following findings relevant to the issue:

> 5. Applicant presents no evidence to support his claim that he was denied his right to present witnesses in his favor.
>
> 6. Hon. McBride [applicant's trial counsel] filed a motion for continuance on August 22, 2004 due to the fact that neither defense counsel nor defensive investigator was able to locate M. Hart.
>
> 7. Hon. McBride and the defense investigator were unable to locate M. Hart in time for trial.
>
> 8. There is no evidence that Applicant was denied his right to obtain M. Hart as a witness.
>
> 9. Max Courtney was unavailable at the motion to suppress hearing.

7

10. Max Courtney would have testified regarding DNA.

11. No DNA testing was done.

12. Max Courtney retested the drugs Applicant was alleged to have possessed.

13. Hon. McBride did not call Max Courtney to testify at trial because the State's chemist testified at trial that the .67 grams amount in the chemist report was a clerical error and testified to actual amounts similar to the amounts concluded by Max. Courtney.

14. There is no evidence that Applicant was denied his right to obtain Max Courtney as a witness.

15. There is no evidence that Applicant was denied his right to obtain witnesses in his favor.

(State Habeas R. at 176-77 (citations to record omitted))

Based on its findings, the state court concluded that, although an accused has a right to compulsory process for obtaining witnesses in his favor under both the United States and Texas Constitutions, counsel was unable to locate Hart and chose to not call Max Courtney to testify. (*Id.* at 184-85) *See Washington v. Texas*, 388 U.S. 14, 19 (1967). Absent proof applicant was actually denied the right to compulsory process, the court recommended denial of the claim. The state court's adjudication of the issue is not unreasonable nor is it contrary to or involve an unreasonable application of clearly established federal law, as determined by the Supreme Court.

"The Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor.*'" *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982) (quoting U.S. Const. amend. VI) (emphasis in original). Max Courtney was available, but counsel chose not to call him as a witness, and applicant presents no proof, by affidavit or other evidence, of Hart's willingness to testify and the substance of her possible testimony. Absent evidence in the record, a court cannot consider a habeas applicant's bald assertions on a critical issue, unsupported by anything else contained in the record, to be of probative value. *Ross v. Estelle*, 684 F.2d 1008, 1011 (5th Cir. 1983).

## (2) *Right to Confront Witnesses*

Applicant claims Hart's out-of-court statements made to the arresting officers C.W. Davis and James G. Pinkston, to which the officers testified *at trial*, violated his constitutional right to confront witnesses against him under *Crawford v. Washington*, 541 U.S. 36 (2004). (Pet'r Mem. in Supp. at 6-11) Specifically, applicant complains of the testimony of the officers *at the*

*motion to suppress hearing* that Hart stated she did not want to press charges, implying applicant had assaulted her, and applicant usually has dope on him and keeps it in his "butt" or "butt crack."

The state habeas court entered the following findings relevant to the issue:

16. Applicant presents no evidence to support his claim that the trial court denied Applicant his right to cross-examine M. Hart.

17. M. Hart did not testify at trial.

18. Hon. McBride filed a motion for continuance on August 22, 2004 due to the fact that neither defense counsel nor defense investigator were able to locate M. Hart.

19. Hon. McBride and the defense investigator were unable to locate M. Hart.

20. Officer C.W. Davis testified at trial.

21. Applicant was allowed to cross-examine Officer C.W. Davis.

22. Officer James G. Pinkston testified at trial.

23. Applicant was allowed to cross-examine Officer James G. Pinkston.

24. Elizabeth VanMunchrath [the state's forensic chemist] testified at trial.

25. Applicant was allowed to cross-examine Elizabeth VanMunchrath.

26. There is no evidence that Applicant was denied his

right to confront his accusers.

(State Habeas R. at 177-78 (citations to record omitted))

Based on its findings, the state court concluded applicant had failed to prove he was denied the right to confront witnesses. (*Id.* at 185)  The state court's adjudication of the issue is not unreasonable nor is it contrary to or involve an unreasonable application of clearly established federal law, as determined by the Supreme Court.  There is no binding precedent from the Supreme Court or this circuit concerning whether *Crawford* applies to pretrial suppression hearings.  *See, e.g., United States v. Morgan*, 505 F.3d 332, 338 (5th Cir. 2007) ("[T]he Fifth Circuit has not decided whether *Crawford* applies to pretrial proceedings and determinations....").

**(3) and (4)  Ineffective Assistance of Counsel**

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right.  U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967).  An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*.  466 U.S. at 668.  *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying

11

the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel an applicant must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id*. at 689. Where, as here, a applicant's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

Applicant contends he received ineffective assistance of trial and appellate counsel. Applicant was represented at trial

by Maggie McBride and on appeal by Robert Ford. The state habeas judge, who also presided over applicant's trial, conducted a hearing by affidavit and entered findings of fact, which were adopted by the Texas Court of Criminal Appeals, refuting applicant's ineffective-assistance claims. (State Habeas R. at 178-82) Applying the *Strickland* attorney-performance standard to its factual findings, the state habeas court concluded applicant had failed to demonstrate that counsel's representation was deficient or that but for counsel's alleged acts of misconduct, the result of his trial or appeal would have been different. (*Id.* at 185-89) Applicant has failed to rebut the findings of fact by clear and convincing evidence, thus the court defers to those findings.

**(a)  Trial Counsel**

Applicant claims trial counsel was ineffective by failing to—

> (1) locate and interview Melanie Hart, the only
> eyewitness, so as to obtain her version of events,
> including any statements she made to the officers, to
> inquire further into why she was with applicant, what
> she may have seen, and who she may have had in the
> vehicle prior to giving applicant a ride, and to
> "determine whether she could testify at trial, the
> substance of her potential testimony, and whether it
> would be consistent with statements and any other
> information given by arresting Officers Pinkston and
> Davis";

13

(2) object to hearsay testimonial statements by Hart to the officers that applicant was hiding drugs in his butt crack;

(3) consult with a DNA expert about testing the bag of pills he allegedly carried on his body;

(4) object to the state's introduction into evidence the "badly damaged pill of alleged cocaine that was supposedly found in [Hart's] vehicle";

(5) object to the state's introduction of false testimony by Officer Pinkston that Pinkston placed applicant in the back seat of the patrol car without hand cuffs;

(6) "obtain and/or subpoena the scene video on time"; and,

(7) request the judge to instruct the jury that it also had to unanimously agree on at least two theories in order to convict him—*i.e.*, that he possessed the one pill capsule that was found in the passenger seat of the car and that he also possessed the eleven pill-capsules that were found in the patrol car.

(Pet'r Mem. in Supp. at 12-29)

Trial counsel, Maggie McBride, submitted a thorough affidavit recounting her representation of applicant and responded particularly to applicant's claims as follows:

**The Scene Video:** At the beginning of every case, I try to outline for every client what my plan is for the case. I wrote a letter to Mr. Hayes on April 24, 2004, telling him that I planned to get copies of the "officer's field notes, their field video, their mdt printouts and their audio transmissions" in his case. I conspicuously failed to include the phrase, "if any." When I read the offense report again, I specifically looked for any reference to a scene video. (If there

is one, the report usually mentions that it was logged into the property room, for instance.) There was none. So I assumed that there was no video. If I had thought, for one minute, that there was a video showing that Ms. Hart had been in the back seat of the patrol car, I would have gotten it before I did anything else. We wouldn't have needed a polygraph on that issue if we'd had a video.

At that time, I'd never heard of the racial profiling law and had absolutely no idea that FWPD was making videos of all traffic stops. And I certainly didn't know the tapes were being destroyed after 90 days. As I discussed above, the first time I ever heard of Article 2.131, CCP, was when Mr. Hayes sent me a copy of it in November, 2004. That was five months after the minimum time the PD is required to keep the tape under law. I immediately did my best to find out if there had ever been a video in Mr. Hayes' case and if it was still in existence. I trust Charlie Brandenberg [the state prosecutor] when he tells me that he checked and FWPD does not have a video, I believe him.

There is absolutely no doubt that if there was a video and if it showed Mr. Hayes claims it would have shown, if would have been highly exculpatory evidence. Having conceded that, I would remind the Court that I thoroughly investigated everything else Mr. Hayes told me and absolutely nothing turned out to be true.

If I had known about the racial profiling law, I would have gotten the video if there ever was one. I did not know about it. If that's ineffective assistance, I'm guilty as sin.

**DNA Test:** In the spring of 2005, when I talked to Max Courtney about the magic capsule that could hold .67 grams of cocaine, I also talked to him about possible fingerprints on the baggie found a couple of chemists had handled it, the first prints on the bag would be smeared beyond recognition. Therefore, even if he tested it for Mr. Hayes' fingerprints and didn't

15

find them, the State would just say they were smeared
out of existence. Many months later and two days
before trial in November, I was watching a late-night
rerun of CSI on TV. In the episode, our heros were
trying to prove who had handled some item of evidence.
They discussed the fact that the fingerprints would be
too smeared to distinguish, but that unless the item
had been washed, the DNA of everyone who had handled it
would still be on it. **Eureka!!!** Early the next
morning, I put a call to Max Courtney. He was out of
town, so I left an urgent message. Later that morning,
Carol Alexander, the court co-ordinator in CDC3 called
and said the Judge wanted to see Charlie and me at 1:30
that afternoon. When we got there, Charlie and I
discussed testing the baggie for DNA. He thought it
might be a good idea. We went in to talk to the Judge
about it. She asked me if the test would be
dispositive in the case. I told her I wasn't sure.
She said, "No." Later that afternoon, I spoke with Max
Courtney and he confirmed that if Mr. Hayes had handled
the baggie, his DNA would be on it and that if he had
carried the baggie against his skin as Melanie Hart
alleged, his DNA would be all over it. The next
morning I filed a written motion for continuance and
argued the motion. At that time I argued that the test
probably would be dispositive. The Judge denied the
motion and we went to trial.

I purposely argued that it would be ineffective
assistance to go to trial without the evidence to show
that the Court was denying Mr. Hayes his right to an
effective defense. I thought I had at least left Mr.
Hayes an excellent issue for appeal; but his appellate
lawyer didn't even raise it.

If I could try this case again, I would definitely
get the DNA test run. I wish I had thought of it
sooner, but I didn't. Once I did think of it, I did
everything I knew how to do in an attempt to get it
done. The Court wouldn't let me. If that's
ineffective assistance, I'm guilty.

**Failure to attempt to find Melanie Hart:** When I

read the rest of Mr. Hayes' writ application, I wondered what trial he attended. Certainly not the one I sat through. This is a perfect example. Mr. Hayes wrote to me in the summer of 2004 that Ms. Hart had left Texas. I told him many times that I thought it was a mistake to call her as a witness. Nevertheless, he insisted on it. Darrell Jones [an investigator] was appointed in March for the express purpose of tracking her down. He visited Mr. Hayes in jail, got all of the information Mr. Hayes had regarding her family and spoke with many of her relatives. While Mr. Hayes was out on bond, in June 2005, he saw Ms. Hart back in Fort Worth. From that information, Mr. Jones was able to track her to a residence she'd left only two weeks before. I filed a motion for continuance on August 22, because Mr. Jones had been unable to find her to serve her with a trial subpoena I requested.

**Failure to inquire of Melanie Hart why she was with Mr. Hayes and what she saw:** If we had ever found Ms. Hart, I certainly would have asked her those questions.

**Failure to investigate who was in Mr. Hart's car prior to Mr. Hayes:** Another great question. I'd have asked her that one too.

**Failure to object to hearsay testimonial statements of Melanie Hart at trial:** I filed a motion in limine regarding Ms. Hart's statements. **Not one word** she said was repeated by any witness in Mr. Hayes' trial.

**Failure to object to false evidence presented by the State:** It would be wonderful if we could just jump up and say, "Objection, Your Honor. The witness is lying through his teeth!" Unfortunately, that usually doesn't work. Mr. Hayes is apparently referring to the variances between the officers' testimony at the suppression hearing and their testimony at trial. I was prepared at trial with a transcription of all of the testimony given at the suppression hearing. On cross of each officer, I challenged the discrepancies

17

in his testimony.

.     .     .

**Failure to object to badly damaged pill that could
not be weighed or tested:**  I objected to the
introduction of all of the drugs.  There was no badly
damaged pill that could not be weighed or tested.  Our
own chemist reported the aggregate weight of the powder
in the 11 capsules found in the police car at over one
gram; so the weight of the one capsule found in Ms.
Hart's car was immaterial.

**Failure to request jury instruction on unanimous
verdict regarding drugs in both vehicles**  This
allegation is on page 23 of the writ application.  I'm
not sure exactly what the complaint is.  If the State
had needed the weight of all twelve capsules to get
over one gram, this allegation would make perfect
sense.  But as discussed immediately above, the drugs
in the patrol care weighed more than one gram.

(State Habeas R. at 87-102 (emphasis in the original) (citations

to record omitted))

The state habeas court entered findings of fact consistent

with counsel's testimony and concluded applicant had failed to

prove deficient performance on counsel's part or show a

reasonable probability that, but for counsel's alleged acts of

misconduct, the outcome of his trial would have been different.

(*Id.* at 178-81; 185-87)  The state court's adjudication of the

claims is not unreasonable nor is it contrary to or involve an

unreasonable application of *Strickland*.

Applicant's claims are largely conclusory or speculative,

such as the existence of a videotape or what the substance of Melanie Hart's testimony would have been. The remaining claims are contradicted by the record, involve strategic decisions by counsel, or would have required counsel to make frivolous motions or objections, which are either insufficient to raise a constitutional issue and/or outside this court's preview on federal habeas review. *See Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Woodfox v. Cain,* 609 F.3d 774, 808 (5th Cir. 2010) (noting claims of ineffective assistance for failing to call witnesses, lay or expert, are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have testified to is too uncertain); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) (holding conclusory arguments are insufficient to support claim of ineffective assistance); *Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections"). Nevertheless, the credible evidence was sufficiently overwhelming in this case to preclude a

showing of prejudice.

**(b) Appellate Counsel**

Applicant contends appellate counsel, Robert Ford, was ineffective by failing to (1) timely notify him of the appellate court's affirmance of the trial court's judgment and his right to file a petition for discretionary review, (2) raise an issue complaining of the trial court's denial of his motion for continuance, (3) file a motion for new trial complaining of ineffective assistance of trial counsel, (4) send him a copy of appellant's brief and the appellate court's opinion, (5) inform him that counsel was no longer on his case, (6) respond to his 2007 complaint filed with the Texas State Bar, (7) send him a copy of his case file to prepare his article 11.07 state habeas application, and (8) file a motion for DNA testing. (*Id.* at 29-32)

In this context, the *Strickland* standard is that applicant must establish that his appellate counsel failed to discover and bring to the attention of the court a solid, meritorious argument based upon directly controlling precedent, and also establish that if he had done so, there is a reasonable probability that the result of the appeal would have been different. *Amador v. Quarterman*, 458 F.3d 397, 410-11 (5ᵗʰ Cir. 2006).

20

The state habeas court entered the following findings relevant to the issue:

73. Applicant presents no evidence to support his claim that he was denied his right to file a petition for discretionary review.

74. Applicant's conviction was affirmed on October 19, 2006.

75. The Court of Criminal Appeals' website indicates that Applicant filed a *pro se* motion for extension to file a petition for discretionary review on November 20, 2006.

76. Two more motions for extension to file a petition for discretionary review were filed before Applicant's petition for discretionary review was filed on February 13, 2007.

77. Applicant's petition for discretionary review was refused on March 7, 2007.

78. Applicant presents no evidence to support his claim that counsel should have raised an ineffective assistance of counsel claim on direct appeal and motion for new trial.

79. Applicant presents no evidence, or allegation, that a claim that the trial court abused its discretion when denying Applicant's motion for continuance would have been successful on appeal.

80. There was no evidence presented in the motion for continuance that the DNA testing would be dispositive or benefit Applicant's defense.

81. The evidence demonstrated that Applicant abandoned the drugs in the police car.

82. Applicant presents no evidence, or allegation, that a claim that the trial court abused its

discretion by denying Applicant's motion to suppress would have been successful on appeal.

83.  Applicant presents no evidence, or allegation, that a claim that the trial court erroneously denied Applicant's request for an "affirmative link" instruction would have been successful on appeal.

84.  Applicant presents no authority to support his claim that appellate counsel was under a duty to file a petition for writ of certiorari on Applicant's behalf.

85.  Applicant presents no authority to support his claim that appellate counsel was under a duty to file a motion for DNA testing under Chapter 64.

(State Habeas R. at 181-82 (citations to record omitted))

Based on its findings, the state court concluded applicant failed to prove he received ineffective assistance of appellate counsel or to show a reasonable probability that, but for counsel's alleged acts of misconduct, the result of his appeal would have been different. The court further concluded, under state law, an application for writ of habeas corpus was the more appropriate vehicle to raise ineffective assistance of counsel claims. (*Id.* at 187-89) The state court's adjudication of the claims is not unreasonable nor is it contrary to or involve an unreasonable application of clearly established federal law, as determined by the Supreme Court.

Appellate counsel is not required to raise every conceivable

argument urged by his client on appeal, regardless of merit. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his or her judgment as to their merits and the tactical approach taken. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). Furthermore, applicant has identified no potentially meritorious points of error that his appellate counsel could or should have included as a part of his appellate brief. Prejudice does not result from appellate counsel's failure to assert a meritless claim or a meritless argument. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994). Thus, it follows, that counsel was not ineffective for failing to raise the issues on appeal.

*(5)* *Brady Claim*

Applicant claims the state withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, applicant claims the state illegally withheld (1) the scene video from the police camera, (2) the initial police report, and (3) the computer printout of the false name Melanie Hart gave to Officer Davis, which would have shown the reason for the traffic stop and/or refuted the officers' testimony that he was put into the back seat of the patrol car without handcuffs by himself and that they had arrested no one else before his arrest.

(Pet'r Mem. in Supp. at 33-35)

The state habeas court entered the following findings relevant to the issue:

86. Applicant presents no evidence to support his claim [that the state] withheld exculpatory evidence.

87. The prosecutor told Hon. McBride that he did not have a videotape and, if one had existed, it had been destroyed before he requested it.

88. There is no evidence that the videotape was improperly destroyed.

89. Applicant presents no evidence to support his claim that the State withheld a computer printout.

90. Applicant presents no evidence that officers make printouts from their car computers when checking drivers' names.

91. Officer Davis testified that he checked M. Hart's information over the computer.

92. There is no evidence that the officers had computer printouts that were exculpatory.

93. Applicant presents no evidence to support his claim that the State had a separate offense report that was not given to the defense.

94. Hon. McBride copied the State's file on April 17, 2004 which included a copy of the offense report.

95. Officer Davis did not refer to a different report or of writing another report that he did not know the location of during his testimony at trial.

96. Officer Davis did not refer to a different report or of writing another report that he did not know

the location of during his testimony at the motion
to suppress.

97. Officer Davis testified that he did not know where
his field notes were during the motion to
suppress.

98. Officer Davis testified that M. Hart was not
listed in the offense report because she gave a
false name.

99. There is no evidence that there existed an offense
report separate from the one provided to
Applicant's counsel.

100. There is no evidence that the State failed to
disclose an offense report.

(State Habeas R. at 182-83 (citations to the record omitted))

Based on its findings, the state court concluded applicant
had failed to prove the state withheld favorable evidence to
applicant that was material to his case. (*Id.* at 190)) The
state court's adjudication of the claims is not unreasonable nor
is it contrary to or involve an unreasonable application of
clearly established federal law, as determined by the Supreme
Court. A habeas applicant's bald assertions on a critical issue,
unsupported by anything in the record, do not raise a
constitutional issue in a habeas proceeding. *Ross*, 694 F.2d at
1011.

**(6)  *Sufficiency of the Evidence***

Applicant claims there was no evidence to prove that he

intentionally and knowingly possessed a controlled substance and exercised care, control, and management over the contraband or that the tests on the contents of the capsules were reliable. He further claims the traffic stop was pretextual and the subsequent search of Hart's vehicle was without consent. (Pet'r Mem. in Supp. at 36-38)

A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Foy v. Donnelly,* 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence. The standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). When reviewing sufficiency-of-the-evidence claims against the underlying conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319. Under *Jackson,* the assessment of the credibility of witnesses is generally beyond the scope of review. *Schlup v. Delo,* 513 U.S. 298, 330 (1995). Instead, determining the weight

and credibility of the evidence is within the sole province of the jury. *United States v. Martinez,* 975 F.2d 159, 161 (5th Cir. 1992). Courts view any required credibility determinations in the light most favorable to the guilty verdict. *United States v. Wise,* 221 F.3d 140, 154 (5th Cir. 2000). They do not second-guess the weight or credibility given the evidence. *United States v. Ramos-Garcia,* 184 F.3d 463, 465 (5th Cir. 1999).

A person commits an offense if he knowingly or intentionally possesses a controlled substance, in this case cocaine, in an amount of more than one gram but less than four grams, including any adulterants or dilutants. TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 2010) "'Possession' means actual care, custody, control, or management." *Id.* § 481.002.

Applying the *Jackson* standard, the state appellate court addressed the issue as follows:

> The question we must answer is whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the cocaine found in the backseat of the patrol car was left there by Hayes, not a prior detainee or the female driver. Officer Davis testified that at Officer Pinkston's direction, he searched the patrol car for contraband prior to Hayes's detention in the vehicle. Officer Pinkston testified that he could not recall specifically when Officer Davis inspected the police cruiser on the date of Hayes's arrest, but Officer Davis was responsible for following the established procedure of searching the patrol car for contraband

after the release of a detainee. No evidence exists that another individual occupied the patrol car's back seat after Officer Davis's last search for contraband but prior to Hayes's arrest. Likewise, no evidence exists that the female driver of the vehicle Hayes had been a passenger in that night had been in or near the police squad car.

Consequently, evaluating the testimony, the jury could have believed that Hayes abandoned the cocaine capsules in the patrol car, thus warranting a finding of guilt. A rational juror could surmise, based on the evidence and beyond a reasonable doubt, that Officer Davis inspected the police cruiser prior to Hayes's detention in the vehicle and that Hayes, not a prior detainee or the female driver, left the capsules in the back seat.

*Hayes*, No. 2-05-431-CR, slip copy, at 4-5.

The state court's determination of the claim is not unreasonable nor is it contrary to or involve an unreasonable application of the *Jackson* standard. Applicant primarily bases his evidentiary challenge to his conviction on the contention that he was not the sole occupant of the backseat area of the patrol car where the bulk of the cocaine capsules were found. Contrary to his assertions, however, there is no proof substantiating this claim. Furthermore, resolving minor inconsistencies or discrepancies in the officers' testimony was the responsibility of the jury. *Jackson*, 443 U.S. at 318-19.

Finally, to the extent applicant attempts to raise claims under the Fourth Amendment as to the legality of the stop and

search of Melanie Hart's car, respondent correctly notes that the claims are barred by *Stone v. Powell*, 428 U.S. 465 (1976). Where an applicant received a full and fair opportunity to litigate a Fourth Amendment claim in state court, he may not receive federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. *Id.* at 494. The record in the instant case undisputably shows that the trial court held a full and complete suppression hearing on applicant's Fourth Amendment issues and that the trial court denied the suppression motion. The state court addressed and rejected the issue a second time, in the context of an ineffective assistance claim, in its findings and conclusions in the state habeas proceedings. (Reporter's R., vol. 3, at 5-72; State Habeas R. at 182, 188) Accordingly, applicant received a full and fair opportunity to litigate his Fourth Amendment claims in state court, and he is precluded from pursuing the claims on federal habeas review.

### (7) *Evidentiary Hearing*

Applicant seeks an evidentiary hearing for purposes of further developing the record in support of his claims. *See* 28 U.S.C. § 2254(e)(2). Section 2254(e)(2) provides:

> (e)(2)   If the applicant has failed to develop the

29

factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

> (A)  the claim relies on—
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.*

Applicant has not met the statutory criteria.  The case can be decided on the record, and the interests of justice do not require a hearing.  Further development of the record is not necessary in order to assess the claims.

For the reasons discussed herein,

The court ORDERS the petition of applicant for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases

in the United States District Court, and 28 U.S.C. § 2253(c), for

the reasons discussed herein, the court further ORDERS that a

certificate of appealability be, and is hereby, denied, as

applicant has not made a substantial showing of the denial of a

constitutional right.

SIGNED September ___/6___, 2010.


JOHN McBRYDE
United States District Judge